FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 28, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARTHUR S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[2] <br><br> Defendant. | No. 4:19-CV-5011-EFS <br><br> **ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING TO ALJ** |

Before the Court are the parties' cross summary-judgment motions. ECF Nos. 11 & 12. Plaintiff Arthur S. appeals a denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by finding that he did

---

[1] To protect the privacy of the social-security plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

not have a severe mental impairment other than an alcohol use disorder. In contrast, the Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies Defendant's Motion for Summary Judgment, ECF No. 12.

## I. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

If there is medical evidence of drug or alcohol addiction (DAA), the ALJ must then determine whether DAA is a material factor contributing to the disability.[18] To determine whether DAA is a material factor contributing to the disability, the ALJ evaluates which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling.[19] Social Security claimants may not receive benefits if the remaining limitations without DAA would *not* be

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] 20 C.F.R. §§ 404.1535(a), 416.935(a).

[19] 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

disabling.[20] The claimant has the burden of showing that DAA is not a material contributing factor to disability.[21]

## II. Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of April 1, 2015.[22] Plaintiff meets the insured status requirements through December 31, 2020.[23] His claim was denied initially and upon reconsideration.[24] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[25]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 1, 2015, the alleged onset date;
- Step two: Plaintiff had the following medically determinable severe impairment: alcohol use disorder; and

---

[20] 42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935(b); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[21] *Parra*, 481 F.3d at 748.

[22] AR 19.

[23] AR 19.

[24] AR 107-10, 114-19.

[25] AR 35-62.

- Because Plaintiff's alcohol use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled.[26]

When assessing the medical-opinion evidence, the ALJ gave:

- very little weight to Michael Lace, Psy.D.'s opinion about Plaintiff's functional abilities without the presence of alcohol use, no weight to Dr. Lace's opinion about Plaintiff's functional limitations overall, and great weight to Dr. Lace's purported opinion that the record was insufficient to properly diagnose mental impairments beyond a substance abuse disorder;
- no weight to Ronald Page, M.D.'s evaluating diagnosis and partial weight to Dr. Page's overall opinion; and
- great weight to the opinions of the state agency consultants that Plaintiff had no severe physical impairments and very little weight to their mental-health opinions.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[27] Plaintiff timely appealed to this Court.

---

[26] AR 19-24.

[27] AR 1-6.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[28] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[29] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence and make credibility assessments, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[31]

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

---

[28] 42 U.S.C. § 405(g).

[29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[30] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[31] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[32] *Id.*

[33] *Id.* at 1115 (quotation and citation omitted).

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Analysis

On this record, the Court finds the ALJ's DAA analysis insufficient and not supported by substantial evidence. The Court appreciates that parsing out whether a claimant's alleged mental impairments are severe impairments without substance abuse is a difficult task. However, here, the ALJ mischaracterized the testifying medical expert Dr. Lace's opinion and failed to abide by the Social Security Administration's Social Security Ruling (SSR) 13-2p's DAA-evaluation process.[35] These errors were not harmless: remand is required.

Dr. Lace testified that the following mental impairments were diagnosed in the record: depressive disorder, anxiety disorder, posttraumatic stress disorder (PTSD), personality disorder, and bipolar disorder.[36] Nonetheless, the ALJ found that Dr. Lace opined that "the record was insufficient to properly diagnose mental impairments beyond substance abuse disorder."[37] Yet, Dr. Lace did testify that Plaintiff suffered from mental health disorders separate from any substance abuse disorder: Dr. Lace opined that Plaintiff's functioning would improve without alcohol abuse but that he would still be moderately limited as to concentration, persistence, and pace, and adapting or managing himself.[38] The ALJ rejected this

---

[35] SSR 13-2p, 2013 WL 621536.

[36] AR 43.

[37] AR 23.

[38] AR 43-49.

opinion on the basis that Dr. Lace was "merely speculating on the effect of alcohol abuse" and "engaging in significant speculation in accepting other diagnoses at all."[39] The ALJ emphasized that the DSM-V requires "exclusion of the effects of substance abuse in order to properly diagnose each of the alleged mental impairments."[40] While "[i]t is important not to make a personality disorder diagnosis based *solely* on behaviors that are consequences of substance intoxication or withdrawal or that are associated with activities in the service of sustaining substance use,"[41] it was Dr. Lace's opinion that Plaintiff still suffered from severe mental impairments separate from alcohol abuse disorder. Therefore, Dr. Lace was not speculating that Plaintiff had severe mental impairments separate from alcohol abuse disorder. To the extent that Dr. Lace was speculating, it was to what extent Plaintiff's non-alcohol-abuse-disorder mental impairments were "severe."

Similarly, the sole examining physician, Dr. Page, opined that Plaintiff suffered from a personality disorder NOS, separate from alcohol dependence.[42] The ALJ discounted Dr. Page's opinion as being internally inconsistent because Dr. Page indicated that Plaintiff's limitations were primarily the result of substance

---

[39] AR 22.

[40] AR 22.

[41] Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* DSM–V, at 649 (5th ed. 2014) (emphasis added).

[42] AR 393-98.

abuse and also that Plaintiff's limitations would persist following a period of sobriety.[43] Dr. Page did not believe Plaintiff's report that he had been sober for six months and suspected malingering, and thus, Dr. Page considered Plaintiff's alcohol use in issuing his diagnosis and limitations opinion. Moreover, he recommended, "in fairness to the patient, a second opinion may be ordered."[44]

In addition, the reviewing staff psychologists Dr. Gilbert and Dr. Robinson indicated that Plaintiff's primary and secondary diagnosed medically determinable impairments were affective and anxiety disorders, respectively, and that Plaintiff's alcohol disorder was neither primary nor secondary but described as "other" in terms of severity.[45]

On this record, particularly given Dr. Lace's testimony and Dr. Page's suggestion that a second evaluation be ordered, the ALJ's decision to discount all mental-health opinions as lacking valid diagnoses of mental impairments other than a substance abuse disorders is not supported by substantial evidence. Rather, the ALJ needed to abide by SSR 13-2p, which requires the ALJ to parse out whether the claimant has only a substance use disorder *or* a dual diagnoses of substance use disorder and co-occurring mental disorder. When "there is no existing medical evidence *or* the evidence as a whole, both medical and nonmedical,

---

[43] AR 395.

[44] AR 397.

[45] AR 66, 99.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

is insufficient for [the ALJ] to make a determination or decision" as to whether the claimant has a severe co-occurring mental disorder, SSR 13-2p encourages the ALJ to order a consultative examination. On this record, without ordering a consultative examination, the ALJ's step-two finding that Plaintiff did not suffer from a severe medically determinable co-occurring medical disorder because there is "[n]o record diagnoses of non-substance abuse mental impairments . . . as the full extent of the claimant's alcohol abuse could not have been considered" by the diagnosing medical providers is not supported by substantial evidence.[46]

Step two is a "de minimus screening device [used] to dispose of groundless claims."[47] It is apparent that Plaintiff's claim of severe mental impairments, separate from alcohol abuse, is not groundless. The record reflects mental problems sufficient to pass the de minimis step-two threshold.[48] Moreover, while the record indicates a history of two DWIs/DUIs in 2004 timeframe,[49] Plaintiff's counseling

---

[46] AR 20.

[47] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[48] *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) ("[T]he reviewing court must 'look at the record as a whole and not merely at the evidence lending support to a finding.'" (internal citation omitted)).

[49] *See, e.g.*, AR 342 (May 2015: Plaintiff "denies that he has used alcohol on and off for most of his adult life. He states he used it as a copying mechanism. He reports he still uses alcohol, but will 'binge' drink every few months. He use[d] to use it to assist

and medical records did not include observations of slurred speech, smell of alcohol, or other indications of alcohol consumption; there are no blood or urinalysis results indicating intoxication; and no diagnosed physical conditions of record relating to alcohol consumption after the alleged onset date of April 1, 2015.

On remand, the ALJ is to order a consultative examination, preferably by an individual who specializes in treating and examining people who have substance use disorders or dual diagnoses of substance use disorders and co-occurring mental disorders.[50] The ALJ must project the severity of Plaintiff's other impairments in the absence of DAA, and, in making this determination, the ALJ should consider medical judgments about the likely remaining medical findings and functional limitations Plaintiff would have in the absence of DAA.[51] The ALJ must recognize

---

him to sleep, but states he does not use it on a daily basis. His last use was a couple of months ago. He did go to alcohol treatment about 14 years ago. This occurred after he had a DUI."); AR 355 (May 2015: admitting to using alcohol heavily in the past and was charged with a DUI); AR 47 (noting that Plaintiff was treated for chemical dependency in 2004); AR 393 (noting that Plaintiff had "a couple of DUIs in 2004" and then was treated for chemical dependency in 2004).

[50] SSR 13-2p at 8.d.

[51] SSR 13-2p; *see also Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (Although SSR's do not have the force of law, they "constitute Social Security administration interpretations of the statute it administers and of its own regulations," and are

that "[m]any people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA" and that it is difficult to reliably predict "that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve," if the claimant were to stop using drugs or alcohol.[52] Therefore, to find that DAA is material, the ALJ must have "evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA."[53]

In addition, on remand, the ALJ is to more meaningfully articulate how Plaintiff's alcohol use constitutes a substance use disorder, as defined by the latest edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association.[54] A claimant's maladaptive alcohol use must be regular and continued to constitute a "substance use disorder": "[a] claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically

---

given deference "unless they are plainly erroneous or inconsistent with the Act or regulations.").

[52] SSR 13-2p at 7.a.

[53] SSR 13-2p at 7.b.

[54] SSR 13-2p at 1.a.i (relying on the DSM's definition).

determinable Substance Use Disorder."[55] In making a finding that Plaintiff had a substance use disorder, the ALJ relied on a July 2017 medical note from William Wagner, D.O., who assessed Plaintiff with "alcohol abuse" based apparently on Plaintiff's self-admission and request for an Antabuse prescription.[56] In comparison, Dr. Lacy testified that the record did not contain firm data about Plaintiff's alcohol usage.[57] On remand, the ALJ is to meaningfully articulate the basis for the finding that Plaintiff's alcohol usage constitutes a substance use disorder, i.e., that his alcohol use was maladaptive *and* that the maladaptive use was continued and non-occasional.

---

[55] SSR 13-2p at 1.b.

[56] AR 19 (citing AR 399, 408). Interestingly, in its response, the Commissioner submits that Dr. Wagner's treatment records do not support the existence of a co-occurring mental disorder, emphasizing that an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." ECF No. 12 at 5-6 (quoting 20 C.F.R §§ 404.1521, 416.921). Yet, Dr. Wagner did not conduct any testing or other objective findings for the diagnosed alcohol abuse and alcohol use, which were the sole records relied on by the ALJ to support his finding that Plaintiff "has been diagnosed with alcohol abuse disorder."). AR 19 (citing AR 399, 408).

[57] AR 48.

Accordingly, the Court remands this matter for further proceedings.[58] It is not clear on the current record whether Plaintiff's severe mental impairments, either singly or in combination, would prevent him from performing substantial gainful employment, in the absence of alcohol abuse. The ALJ must develop the record further by ordering a consultative examination, preferably by an individual trained in addressing co-occurring mental disorders and alcohol abuse. After reviewing the consultative examination, the ALJ is to determine whether additional testimony from a medical expert is needed. Then, the ALJ is to meaningfully articulate the step-two findings and, as necessary, proceed with the remaining sequential analysis and DAA analysis.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office is directed to substitute Andrew M. Saul, Commissioner of the Social Security Administration, as the Defendant.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

3. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

---

[58] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 28th day of October 2019.

_____s/Edward F. Shea_____ .
EDWARD F. SHEA
Senior United States District Judge